AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No.   21-4121mb |
| | ) |
| 1) an Apple iPhone with a red back cover, a cracked | ) |
| screen, and no case; and 2) an Apple iPhone with a red | ) |
| back cover, a cracked screen, and black cell phone case | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona
*(identify the person or describe the property to be searched and give its location):*

See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*

See Attachment B

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before     May 20, 2021
                                                                    *(not to exceed 14 days)*

❏ in the daytime  6:00 a.m. to 10 p.m.          ❏ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
Any Duty Magistrate in the District of Arizona          .
                                 *(name)*

❏ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ❏ for _____ days *(not to exceed 30)*.
                                                    ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued: _____          Camille D. Bibles   Digitally signed by Camille D. Bibles
                                                                          Date: 2021.05.06 14:51:43 -07'00'
                                                    _____
                                                              *Judge's signature*

City and state:   Flagstaff, AZ                     Hon. Camille D. Bibles, U.S. Magistrate Judge
                  _____          *Printed name and title*

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: 21-4121mb | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

    *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

Date: _____

                                        _____
                                            *Executing officer's signature*

                                        _____
                                           *Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is:

1) an Apple iPhone with a red back cover, a cracked screen, and no case, including any attached SIM cards, recovered by the FBI from the scene of G.J.'s death near Chinle, Arizona; and

2) an Apple iPhone with a red back cover, a cracked screen, and black cell phone case, including any attached SIM cards, recovered from G.J.'s person by the University of New Mexico Office of Medical Investigator (together, the **Target Devices**).

The **Target Devices** are now stored at the FBI Phoenix Office Evidence Control Room located at 21711 North 7th Street, Phoenix, Arizona.

This warrant authorizes the forensic examination of the **Target Devices** for the purpose of identifying the electronically-stored information described in Attachment B.

1

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED

All records contained in the electronic devices described in Attachment A (the **Target Devices**) that constitute evidence of violations of Title 18, United States Code, Sections 1153 and 1111, Second Degree Murder; Title 18, United States Code, Sections 1153 and 113(a)(3), Assault with a Dangerous Weapon; and Title 18, United States Code, Sections 1153 and 113(a)(6), Assault Resulting in Serious Bodily Injury; committed by C.J. against G.J. on or about March 26, 2021, including the following:

1. All records, documents, programs, applications, photographs, videos or materials—including all recoverable email, text, voicemail messages, and other communications—sent, received, deleted, or in draft form, contained on the **Target Devices** which evidence, discuss, describe, or relate to the interactions or relationship between C.J. and G.J.; any motivation for violence between C.J. and G.J.; weapons possessed by C.J. and/or G.J.; C.J. and/or G.J.'s mental states, including mental health and substance abuse information; any verbal or physical altercations between C.J. and G.J.; the motive, means, and opportunity to commit the subject offenses; preparatory steps for the subject offenses; and post-offense statements and conduct related to the subject offenses.

2. Evidence from the **Target Devices'** address books, call logs, and call histories, including call logs and call histories for incoming, outgoing, and missed calls, which evidence or relate C.J. and/or G.J.'s communications or activities on March 26, 2021 or otherwise relate to violations or attempted violations of the subject offenses;

3. Any pictures, video files, or images, in whatever form, of C.J. and/or G.J.;

2

4. Any Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries to include Cell Tower and WiFi entries sufficient to show location and user attribution of the **Target Devices** at times relevant to violations or attempted violations of the subject offenses;

5. Evidence of the times the **Target Devices** were used;

6. Any physical keys, encryption devices, dongles, and similar physical items that are necessary to gain access to the **Target Devices** or data stored on the **Target Devices**;

7. Any passwords, password files, test keys, encryption codes or other information necessary to access the **Target Devices** or data stored on the **Target Devices**; and

8. Evidence of user attribution showing who used or owned the **Target Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence as described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this

3

warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Arizona 

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*
1) an Apple iPhone with a red back cover, a cracked
screen, and no case; and 2) an Apple iPhone with a red
back cover, a cracked screen, and black cell phone case

)
)
)
)
)
)

Case No. 21-4121mb

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Arizona _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153 & 1111 | Second Degree Murder |
| 18 U.S.C. §§ 1153 & 113(a)(3) | Assault with a Dangerous Weapon |
| 18 U.S.C. §§ 1153 & 113(a)(6) | Assault Resulting in Serious Bodily Injury |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Jillian Besancon (JB)

_____
*Applicant's signature*

Andrew Fulp, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

City and state:  Flagstaff, AZ

**Camille D. Bibles**  Digitally signed by Camille D. Bibles
Date: 2021.05.06 14:51:08 -07'00'
*Judge's signature*

Hon. Camille D. Bibles, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF PROPERTY TO BE SEARCHED**

The property to be searched is:

1) an Apple iPhone with a red back cover, a cracked screen, and no case, including any attached SIM cards, recovered by the FBI from the scene of G.J.'s death near Chinle, Arizona; and

2) an Apple iPhone with a red back cover, a cracked screen, and black cell phone case, including any attached SIM cards, recovered from G.J.'s person by the University of New Mexico Office of Medical Investigator (together, the **Target Devices**).

The **Target Devices** are now stored at the FBI Phoenix Office Evidence Control Room located at 21711 North 7th Street, Phoenix, Arizona.

This warrant authorizes the forensic examination of the **Target Devices** for the purpose of identifying the electronically-stored information described in Attachment B.

1

## ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEIZED

All records contained in the electronic devices described in Attachment A (the **Target Devices**) that constitute evidence of violations of Title 18, United States Code, Sections 1153 and 1111, Second Degree Murder; Title 18, United States Code, Sections 1153 and 113(a)(3), Assault with a Dangerous Weapon; and Title 18, United States Code, Sections 1153 and 113(a)(6), Assault Resulting in Serious Bodily Injury; committed by C.J. against G.J. on or about March 26, 2021, including the following:

1. All records, documents, programs, applications, photographs, videos or materials— including all recoverable email, text, voicemail messages, and other communications— sent, received, deleted, or in draft form, contained on the **Target Devices** which evidence, discuss, describe, or relate to the interactions or relationship between C.J. and G.J.; any motivation for violence between C.J. and G.J.; weapons possessed by C.J. and/or G.J.; C.J. and/or G.J.'s mental states, including mental health and substance abuse information; any verbal or physical altercations between C.J. and G.J.; the motive, means, and opportunity to commit the subject offenses; preparatory steps for the subject offenses; and post-offense statements and conduct related to the subject offenses.

2. Evidence from the **Target Devices'** address books, call logs, and call histories, including call logs and call histories for incoming, outgoing, and missed calls, which evidence or relate C.J. and/or G.J.'s communications or activities on March 26, 2021 or otherwise relate to violations or attempted violations of the subject offenses;

3. Any pictures, video files, or images, in whatever form, of C.J. and/or G.J.;

2

4. Any Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries to include Cell Tower and WiFi entries sufficient to show location and user attribution of the **Target Devices** at times relevant to violations or attempted violations of the subject offenses;

5. Evidence of the times the **Target Devices** were used;

6. Any physical keys, encryption devices, dongles, and similar physical items that are necessary to gain access to the **Target Devices** or data stored on the **Target Devices**;

7. Any passwords, password files, test keys, encryption codes or other information necessary to access the **Target Devices** or data stored on the **Target Devices**; and

8. Evidence of user attribution showing who used or owned the **Target Devices** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence as described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this

3

warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ELECTRONICALLY SUBMITTED AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Andrew Fulp, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      Your affiant is a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and is currently assigned to the Gallup, New Mexico, Resident Agency of the Phoenix, Arizona, FBI Field Division.  Your affiant has been employed as a Special Agent of the FBI since 2017, and has received training at the Federal Bureau of Investigation Training Academy in Quantico, Virginia. Your affiant has received training in death investigations and investigations of other violent crimes.  In the course of his official duties, your affiant is charged with the investigation of crimes occurring on (among other places) the Navajo Indian Reservation within the Federal District of Arizona.

2.      This affidavit is submitted pursuant to Federal Rule of Criminal Procedure 41 for a search warrant authorizing the examination of property, specifically, the contents of two iPhone smartphones (together, the **Target Devices**) seized during the investigation into the death of G.J. The **Target Devices** are located in the District of Arizona and are further described in Attachment A hereto, incorporated herein by reference.  The applied-for warrant would authorize the forensic examination of the **Target Devices** for the purpose of identifying the electronically-stored data particularly described in Attachment B hereto.  As described in Attachment B and incorporated herein by reference, your Affiant seeks to seize evidence of violations of Title 18, United States Code, Sections 1153 and 1111, Second Degree Murder; Title 18, United States Code, Sections 1153 and 113(a)(3), Assault with a Dangerous Weapon; and Title 18, United States Code, Sections 1153 and 113(a)(6), Assault Resulting in Serious Bodily Injury.

1

3.      The following information was developed by your affiant and other agents of the FBI and/or criminal investigators of the Navajo Department of Criminal Investigations (NDCI) Unit and/or Navajo Nation Police Department (NPD), in connection with the joint FBI/NDCI investigation into the death of G.J.  Based on information received thus far, it is believed G.J. was killed by his brother C.J., an enrolled member of the Navajo Nation, outside of their residence near Chinle, Arizona, on the Navajo Nation Indian Reservation.   C.J. has claimed that the killing occurred in self-defense.

4.      The statements contained in this affidavit are based in part on information provided to your affiant, either directly or indirectly through reports or affidavits, and information provided by witnesses. Your affiant also relies on his experience, training, and background as a Special Agent with the FBI in evaluating this information, and on your affiant's own work on this case. Because this affidavit is made for the purpose of demonstrating probable cause for the issuance of the search warrant, it does not purport to set forth all of your affiant's knowledge of this investigation.

## PROBABLE CAUSE

5.      On March 26, 2021, Navajo Nation Criminal Investigator Cornelia Perry notified your affiant that a male, later identified as G.J., was found dead outside of his residence in Chinle, Arizona, by NPD officers during the evening hours of March 26, 2021. Your affiant responded to the scene and met with the first responders, NPD Officers Nehemiah Begay and Johnathan Yazzie. Your affiant later learned that G.J. lived in a hogan on the property. His mother R.J., brother C.J., sister S.J., and sister V.J. lived in a trailer home beside the hogan.

6.      According to Officer Begay and an NPD report, NPD received a call from C.J. at about 7:54 p.m. on the evening of March 26, 2021. C.J. stated that his brother G.J. was drunk and

trying to hit him with a knife. Around 8:35 p.m. and 8:42 p.m., NPD also received calls from a male caller stating that R.J. (the mother of C.J. and G.J.) advised him to call the police as someone at her residence was on the ground and G.J. had stabbed his brother C.J.

7.    At around 8:56 p.m., Officers Begay and Yazzie arrived at the property and observed a male, later identified as G.J., lying face down on the ground. While the officers were searching the area and attempting to check G.J.'s pulse, a male who identified himself as C.J. walked out of the trailer. C.J. was placed in handcuffs in the prisoner compartment of a patrol vehicle. While C.J. was detained, he spontaneously stated to Officer Begay, "it was self-defense" and "we fought on the ground."

8.    After C.J. was detained, Officers Begay and Yazzie conducted a safety sweep/clearance of the trailer. No other persons were in or near the trailer, other than T.B., a family member who had led police to the scene. The only people already at the residence upon Officers Begay and Yazzie's arrival were G.J. and C.J.

9.    Your affiant understands that C.J., who refused medical attention, was taken into custody on tribal charges. Your affiant is aware that C.J. has a Navajo census number indicating he is an enrolled member of the Navajo Nation.

10.    The property owner of the residence, R.J., provided consent to law enforcement to conduct a search of her property. The search team recovered G.J.'s body with stab wounds located in various locations. Officer Begay observed that G.J. had a laceration running the entire horizontal length of his neck. Emergency medical personnel assessed that the neck laceration was three inches deep. In total, emergency medical personnel found 18 open lacerations on G.J.'s body visible from his supine position, including lacerations to his back, the back of his head, and on his

3

hands. The officers observed a kitchen knife about three feet from G.J.'s body. The knife appeared to have a blood-like substance on the bladed edge.

11.     The search team also recovered an Apple iPhone with a red back cover, a cracked screen, and no case (**Target Device 1**). **Target Device 1** was located in or under a sweatshirt located on the ground near G.J.'s body. Vehicle keys were also found in or under the sweatshirt. **Target Device 1** is currently located in FBI evidence storage in Phoenix, Arizona. On May 4, 2021, your affiant interviewed R.J. about the ownership of the set of keys found near **Target Device 1**. R.J. said the keys were being used by C.J. to drive a vehicle belonging to R.J.

12.     Officer Begay spoke with T.B., an uncle of G.J. and C.J., on March 26, 2021. T.B. stated that he received a call from R.J. to check on her sons, and that he and two other individuals arrived at the residence around 8:30 p.m. T.B. stated that he walked to G.J. and yelled G.J.'s name to wake him up, but did not get a response. C.J. came out of the residence and told T.B. (in T.B.'s words paraphrasing C.J.), "he did it because it was self-defense, he attacked him first, [G.J.] was drunk, he stabbed him, he killed him." C.J. told T.B. he used the knife G.J. used to attack him and that the knife was lying right beside G.J. C.J. told T.B. he had already showered and changed his clothes.

13.     Your affiant interviewed R.J. on March 27, 2021. R.J. said **Target Device 1** belonged to G.J. R.J. advised that she and two of her daughters had gone to Flagstaff, and C.J. and G.J. were the only people home at the time. After R.J. left the residence, both C.J. and G.J. called her talking about what was going on. R.J. began to get calls and texts from C.J. stating that G.J. was not okay and that he was out of it and angry. R.J. told C.J. to call the police. G.J. also called R.J. and cursed at her and sent rude text messages to her daughters. G.J. then called R.J. again and said that he was getting ready to fight, and something about going into the hogan to

4

barricade himself and/or grab a gun.  (R.J. stated that she had guns stored in the hogan.)   Neither C.J. nor G.J. mentioned a knife.

14.     R.J. further informed your affiant that when G.J. gets out of it he gets angry.  Both brothers usually get along, but a small thing may cause G.J. to get angry.  G.J. was supposed to take medication for schizophrenia and bipolar disorder, but he did not take his medication.  G.J. talked about hearing voices.

15.     Your affiant interviewed C.J. and G.J.'s sister, S.J., on March 29, 2021.  S.J. reported that while she was with her mother R.J. on March 26, she spoke with G.J.  G.J. said "[C.J.] is trying to call the cops on me, help me, help me."  S.J. asked what was going on, and G.J. replied "help me, [C.J.]'s coming after me, help me."  S.J. handed the phone to R.J., and G.J. started cursing and yelling at R.J. before the phone disconnected.

16.     S.J. relayed past several instances during which G.J. was violent with family members, including an incident during which G.J. pointed a knife at R.J. and C.J.  During the investigation, your affiant also obtained prior NPD reports related to G.J. showing that G.J. had a documented history of threatening other people—including C.J.—with knives.

17.     On March 28, 2021, an autopsy was performed on the body of G.J. by the University of New Mexico Office of Medical Investigator (OMI).  The autopsy results are still pending.    During a property inventory search by OMI, an Apple iPhone with a red back cover, cracked screen and black cell phone case (**Target Device 2**) was retrieved from G.J.'s person. **Target Device 2** was sent by OMI to FBI at the conclusion of the autopsy.  **Target Device 2** is currently located in FBI evidence storage in Phoenix, Arizona.

18.     On April 29, 2021, your affiant interviewed R.J. about the ownership of the **Target Devices** given their visual similarities.  R.J. said both G.J. and C.J. had red iPhones, and each had

a cracked screen.  R.J. believed C.J.'s red iPhone did not have a case, but that G.J.'s red iPhone had a black case.  R.J. believed G.J. had one phone, and C.J. had one phone.  Based on this information, your affiant believes that **Target Device 1** is likely C.J.'s iPhone (despite that R.J. earlier identified the **Target Device 1** as G.J.'s during her March 27, 2021 interview).  **Target Device 2,** which was found on G.J.'s person, is likely G.J.'s iPhone.

19.     Based on your affiant's training and experience, your affiant knows that individuals involved in disputes and/or violence often have altercations, disagreements, and arguments prior to the commission of a crime of violence.  In some cases, these communications occur using cellular devices and these cellular devices may contain evidence of a crime, motivations for committing a crime, or evidence of a person's state of mind around the time a crime was committed.  Additionally, these conversations can occur hours, minutes, days, weeks, or months prior to the crime.  This includes, but is not limited to, text message communications, telephone calls, and email communications.  In this case specifically, there is evidence that both C.J. and G.J. communicated with R.J. by phone and text message on the evening of March 26, 2021.  The content of and information concerning these and other communications may assist in determining a timeline of events leading up to G.J.'s death and the circumstances of G.J.'s death.

## TECHNICAL TERMS

20.     Based on my training and experience, your affiant uses the following technical terms to convey the following meanings:

    a.  Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.

This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.   Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include

various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

21.   Based on your affiant's training and experience, your affiant also knows that each of the **Target Devices** has the capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22.    Based on your affiant's knowledge, training, and experience, your affiant knows that electronic devices such as the **Target Devices** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensic tools.

23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically-stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each **Target Device** was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the **Target Devices** because:

   a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the applied-for warrant would permit the examination of the **Target Devices** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

25.  *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

26.     Your affiant respectfully submits that there is probable cause for a search warrant authorizing the examination of the **Target Devices** described Attachment A to seek the items described in Attachment B.

27.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Special Agent Andrew Fulp
Federal Bureau of Investigation

Sworn before me telephonically this ___6th___ day of May, 2021 at _____.

**Camille D. Bibles**
Digitally signed by
Camille D. Bibles
Date: 2021.05.06
14:50:21 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge

12